**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

MICHELLE S.-D.,

                                        Plaintiff,

           v.                                                          1:18-CV-1407
                                                                       (CFH)
COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

**APPEARANCES:**                              **OF COUNSEL:**

Michelle S.-D.
Plaintiff <u>pro</u> <u>se</u>

Social Security Administration              KEVIN MICHAEL PARRINGTON, ESQ.
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203
Attorneys for defendant

**MEMORANDUM-DECISION & ORDER**[1]

       Plaintiff <u>pro</u> <u>se</u> Michelle S.-D.[2] brings this action pursuant to 42 U.S.C. § 405(g)

seeking review of a decision by the Commissioner of Social Security ("Commissioner"

or "defendant") denying her applications for disability and disability insurance benefits.

Dkt. No. 1 ("Compl.").  Plaintiff moves for a finding of disability, and the Commissioner

cross moves for a judgment on the pleadings.  Dkt. Nos. 13, 15. For the following

_____

       [1]  Parties consented to review of this matter by a Magistrate Judge pursuant to 28 U.S.C. §
636(c), Federal Rule of Civil Procedure 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18. Dkt. Nos.
4, 6.

       [2]  In accordance with guidance from the Committee on Court Administration and Case
Management of the Judicial Conference of the United States, which was adopted by the Northern District
of New York in 2018 to better protect personal and medical information of non-governmental parties, this
Memorandum-Decision & Order will identify plaintiff by her first name and last initial.

reasons, the determination of the Commissioner is affirmed, the Commissioner's motion for judgment on the pleadings is granted, and plaintiff's motion for judgment on the pleadings is denied.

## I. Background[3]

Plaintiff was born on February 21, 1979, has a General Education Diploma, and completed three years of college. T at 31-32, 74. She resides with her eighteen-year-old daughter. Id. at 31. On May 22, 2016, plaintiff protectively filed a Title II application for disability and disability insurance benefits, alleging disability beginning on April 15, 2016. Id. at 75-75. Her claim was denied on September 26, 2016. Id. at 86. Plaintiff requested a hearing, and a hearing was held on July 7, 2017, before Administrative Law Judge ("ALJ") Brian LeCours. On July 17, 2017, the ALJ rendered an unfavorable decision. Id. at 11-19. On October 2, 2018, the Appeals Council denied plaintiff's request for review, noting that plaintiff's request was filed late, and thereafter determined that the reasons plaintiff provided did "not provide a basis for changing the Administrative Law Judge's decision," making the findings the final determination of the Commissioner. Id. at 1-7 at 60. Plaintiff commenced this action on December 4, 2018. See Compl.

---

[3]    References to the administrative transcript will be cited as "T" and page citations will be to the page numbers in the bottom right-hand corner of the administrative transcript. All other citations to documents will be to the pagination generated by the Court's electronic filing system, CM/ECF, and will reference the page numbers at the documents' header, and not the pagination of the original documents.

## II. Discussion

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original)(internal quotation marks omitted). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)). However, if the correct legal standards were applied and the ALJ's finding is supported by supported by substantial evidence, such finding must be

3

sustained, "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted); Venio v. Barnhart, 213 F.3d 578, 586 (2d Cir. 2002).

## B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A). A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience. Id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). Additionally, the severity of the impairment is "based [upon] objective medical facts, diagnoses or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. §

4

404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added).  The plaintiff bears the initial burden of proof to establish each of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere.  Id. at 1180 (citing Berry, 675 F.2d at 467).

Next, an ALJ is to assess the degree of functional limitation, or the impact the claimant's mental limitations have on the claimant's "ability to function independently, appropriately, effectively, and on a sustained basis."  20 C.F.R. § 404.1520a(c). The

5

ALJ must assess the claimant's degree of functional limitation in four functional areas: (1) "[a]ctivities of daily living," (2) "social functioning," (3) "concentration, persistence, and pace," and (4) "episodes of decompensation." Id. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ must "rate" the functional degree of limitation in each of these four areas as "[n]one, mild, moderate, marked [or] extreme." Id. §§ 404.1520a(c)(4), 416.920a(c)(4). If the ALJ finds the degree of limitation in each of the first three areas to be "mild" or better and identifies no episodes of decompensation, the ALJ "will generally conclude" that the plaintiff's impairment is "not severe." Id. § 404.1520a(d)(1). Where the claimant's mental impairment is "severe," the ALJ must "determine if it meets or is equivalent in severity to a listed mental disorder." Id. § 404.1520a(d)(2). "If yes, then the [plaintiff] is 'disabled.'" Petrie, 412 F. App'x at 408 (quoting 20 C.F.R. § 404.1520a(d)(2)).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)). However, a court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. See Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998). The Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs.,

733 F.2d 1037, 1041 (2d Cir. 1984).

### C.  ALJ Decision

Applying the five-step disability sequential evaluation, the ALJ determined that plaintiff had not engaged in substantial gainful activity since April 15, 2016, the alleged onset date.  T at 13.  The ALJ found at step two of the sequential evaluation that plaintiff had the severe impairments of anxiety disorder, mood disorder, degenerative disc disease, history of pulmonary fibrosis, and asthma.  Id.  At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id. at 14.  Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC"):

> to perform light work as defined in 20 C.F.R. 404.1567(b) except: the claimant must avoid concentrated exposure to pulmonary irritants such as fumes, odors, dust and gases. Additionally, the work must consist of unskilled tasks, work requiring little or no judgment to do simple duties that can be learned on the job in a short period of the and have minimal (defined as less than occasional, and for brief and routine content) interaction with the general public.  There can be occasional interaction with co-workers and supervisors.

Id. at 15.  At step four, the ALJ determined that plaintiff was not capable of performing his past relevant work.  Id. at 18.  Considering plaintiff's RFC, age, education, and work experience, together with the Medical-Vocational Guidelines, the ALJ further concluded that there were "jobs that exist in significant numbers in the national economy that the claimant can perform."  Id.  Therefore, the ALJ determined that plaintiff "has not been

under a disability, as defined in the Social Security Act, from April 15, 2016, through the date of this decision[.]" Id. at 19.

### D.  Arguments

Plaintiff argues that the ALJ's determination is not based upon substantial evidence.  Dkt. No. 13.  Specifically, she contends that the ALJ's review of her mental health treatment does not accurately reflect the full medical record.[4]  Id. at 3-4.  She points to various treatment notes from her psychiatrist Dr. Richard Plotkin which she argues support a finding that her depression has not improved, including an "invitation" to "spend some time on the psychiatric unit." Id. at 4.  Further, plaintiff contends that the ALJ erred in his determination that there was no indication that her psychiatric condition would last for at least twelve months by pointing to other medical evidence that she argues supports a conclusion that it would last for at least that amount of time.  Id. at 5-8.  She also argues that a conclusion of disabling limitations is supported by the opinion of psychiatric consultative examiner Dr. Mena Stramenga.  Id. at 8.  Thus, based on record medical evidence, plaintiff contends the ALJ should have found her disabled due to her mental health conditions.  Id.

The Commissioner argues that plaintiff misconstrues the standard of review. Dkt. No. 15 at 7.  The Commissioner contends that "the question is whether substantial evidence exists for the ALJ's findings, not whether substantial evidence exists for Plaintiff's arguments."  Id.  Further, the Commissioner argues that the evidence to which

---

[4]  Plaintiff does not challenge the ALJ's assessment of her physical functioning.  See Dkt. No. 13.

plaintiff points "does not undermine the substantial evidence supporting the ALJ's decision." Id. The Commissioner points to largely normal mental status examinations and notes that medical records show that many of plaintiff's mental health symptoms improved. Id. at 8. Similarly, the Commissioner contends that the ALJ's decision to give Dr. Stramenga's opinions little weight is supported by substantial evidence because her opinions were not consistent with the totality of the record, including medical treatment notes from around the same time of the evaluation showing improvements as well as plaintiff's part-time work as a companion. Id. at 9. The Commissioner asserts that the ALJ's conclusion is also supported by the opinion of state agency psychological consultant H. Ferrin. Id. Thus, the Commissioner argues that the ALJ's decision is supported by substantial evidence despite plaintiff's opinion that the evidence supports a conclusion that she is disabled. Id. at 10.

## E.  Analysis

Plaintiff points to various treatment records to argue that the ALJ's residual functional capacity ("RFC") assessment is not supported by substantial evidence as "[t]he record supports a finding that the claimant's mental health impairments preclude gainful employment." Dkt. No. 13 at 3. Plaintiff argues that the ALJ erred in finding that the medical evidence supports a conclusion that plaintiff's mental health condition improved and that her mental health symptoms cannot be expected to last for at least twelve months. Id. at 4.

In cases where a mental impairment is present, the ALJ is required to apply a

9

special psychiatric review technique when assessing its severity and impact on the claimant's work-related functioning. Lewis v. Colvin, 122 F. Supp. 3d 1, 6 (N.D.N.Y. 2015); 20 C.F.R. §§ 404.1520a & 416.920a (2015). The regulations indicate that the technique requires the ALJ to first evaluate the pertinent symptoms, signs, and laboratory findings to determine whether there is a medically-determinable mental impairment. 20 C.F.R. §§ 404.1520a(b)(1) & 416.920a(b)(1). Next, the ALJ must rate the degree of functional limitation resulting from those impairments by considering all relevant and available clinical signs and laboratory findings, the effects of the claimant's symptoms, and how the claimant's functioning might be affected by factors including chronic mental disorders, structured settings, medications, and other treatment. 20 C.F.R. §§ 404.1520a(b)(2) & 416.920a(b)(2). In rating the claimant's mental impairment, the ALJ must consider multiple issues and all relevant evidence, assessing and rating the claimant's functioning in the four broad areas of activities of daily living, social functioning, concentration, persistence and pace, and episodes of decompensation; in doing so, the ALJ should consider the extent to which the claimant's impairments interfere with her ability to function independently, appropriately, and effectively on a sustained basis. 20 C.F.R. §§ 404.1520a(c)(2)-(3) & 416.920a(c)(2)-(3). After rating the claimant's mental impairments accordingly, the ALJ must determine whether the claimant's mental impairments are severe, whether they meet or equal the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, App. I, and, if they do not meet or equal a listing, what effect they have on the claimant's RFC. 20 C.F.R. §§ 404.1520a(d)(1)-(3) & 416.920a(d)(1). The ALJ is to incorporate the

pertinent findings and conclusions based on the technique into the written decision, showing the significant history and the functional limitations that were considered in reaching a conclusion about the severity of the claimant's mental impairments. 20 C.F.R. §§ 404.1520a(e)(4) & 416.920a(e)(4).

In assessing plaintiff's medically-determinable mental health impairments, the ALJ applied the psychiatric review technique factors when he concluded that the record supports a determination that plaintiff "has moderate limitations in understanding, remembering, or applying information, moderate limitations interacting with others, moderate limitations in concentration, persistence, and maintaining pace, and mild limitations in the area of adapting and managing oneself." T at 13-14; 15-17. In so concluding, the ALJ pointed to plaintiff's part-time work as a companion where she "assist[ed] others with their needs such as cooking, shopping, and running errands" and noted that she is able to "tend[] to her own personal needs and perform[] basic activities of daily living." Id. The ALJ further pointed to plaintiff's ability to manage money. Id. at 14. Additionally, he noted that the consultative examiner "found attention and concentration to be intact." Id. The ALJ also observed that plaintiff is "routinely described as cooperative and as having presented in an adequate manner, which was consistently observed within the hearing setting." Id. at 14 (citing Exhs. 3E, 10F, 11F, hearing transcript).

In reaching the RFC, the ALJ made clear that he considered the paragraph B criteria in concluding that plaintiff's mental impairments caused no marked functional limitations. T at 14. He concluded that plaintiff "is independent and capable of

functioning outside of a highly supportive arrangement, and there is nothing to suggest that the claimant is incapable of handling marginal adjustments." Id. However, the ALJ concluded that plaintiff's medically-determinable impairments "could be expected to cause only some of the alleged symptoms," but that plaintiff's symptom and allegations as to limitations "are not entirely consistent with the record because it shows that, while there are some limitations of functioning, they do not preclude all fulltime work." Id. In so finding, as relevant here, the ALJ noted that plaintiff's part-time work as a companion, although not gainful activity, "is beyond the restrictions outlined in the established residual functional capacity." Id. The ALJ acknowledged plaintiff's testimony that she is unable to leave the house. Id. The ALJ noted that, in comparison to plaintiff's contentions, the work she performs as a companion demonstrates that her "socialization and skill levels . . . are being exhibited at a much higher level," further supported by evidence that plaintiff "wanted more clients that she was assigned to work with." Id.

In performing a function-by-function analysis of plaintiff's mental health limitations, the ALJ reviewed in detail the medical opinions of record: Dr. Plotkin, plaintiff's treating psychiatrist, through assessment of his treatment notes; Dr. Stramenga, the psychiatric consultative examiner; and Dr. Ferrin, nonexamining agency single decision maker. T at 17. The ALJ noted "some details outlining consistency with the allegations presented in that the claimant has been diagnosed, participated in formal counseling, and receives medication management." Id. at 16. The ALJ noted that in June 2016, Dr. Plotkin documented that plaintiff's depression improved. Id. The

ALJ further observed that plaintiff's mental status examinations are "mostly within normal limits." Id. He noted that Dr. Plotkin described plaintiff as being able to concentrate and cooperative. Id. The ALJ also assessed plaintiff's relationship with others, observing that in her counseling sessions, she reports having good relationships with her clients, communicating well with staff, and maintaining "ongoing conversations with two friends." Id. Plaintiff's "mood was documented as being more euthymic and that she seems somewhat more confident and being more social." Id. Plaintiff also told her counselor that she "continued to function well in her job" and that "psychotheapy is extremely helpful." Id. The ALJ acknowledged that plaintiff reported "difficulties dealing with lost relationships" but that "even during times of increased stressors, mental status examinations have not faltered in that claimant displays appropriate eye contact and unremarkable motor behavior" and is "described as helpful, responsible, cooperative, and to have good relationships." Id. The ALJ documented that plaintiff's decision making is in tact, her memory is normal, and "she is noted to be able to concentrate." Id. Further, the ALJ noted that plaintiff "was also assigned several new clients at work." Id.

The ALJ gave "little weight" to psychiatric consultative examiner Dr. Mena Stramenga's opinion, dated August 29, 2016, because her opinions as to marked limitations were "not consistent with the totality of the record" and "more restrictive than the claimant's already demonstrated adaptive functioning." T at 17, 314-17. This conclusion is appropriate as there is insufficient medical evidence to support Dr. Stramenga's conclusion that plaintiff has limitations as severe as she opined. Dr.

Stramenga noted that plaintiff was "cooperative and related in an adequate manner" during her examination.  Id. at 315.  Her speech was fluent and clear and her expressive and language skill adequate.  Id. at 316.  Plaintiff's affect was depressed, mood was dysthymic, sensorium clear, and she was oriented x3.  Id.  Her attention and concentration were intact, and her recent and remote memory skills 'were mildly impaired due to anxiety or nervousness in the evaluation and emotional distress secondary to depression and anxiety."  Id.  Plaintiff's intellectual functioning was within average range, and her insight and judgment were good.  Id.  Plaintiff reported being able to complete daily functioning with the exception of shopping independently.  Id.  Plaintiff reported "not socializing with friends and family relationships are strained."  Id.

Dr. Stramenga concluded that plaintiff could "follow and understand simple directions and instructions" and "perform simple tasks independently."  T at 317.  Plaintiff was reported as having mild difficulties in maintaining attention and concentration and moderate to marked difficulties in maintaining a regular schedule.  Id.  Dr. Stramenga found plaintiff to have mild difficulties learning new tasks, moderate difficulties in performing complex tasks independently, mild difficulties in making appropriate decisions, and marked difficulties in relating adequately with others and dealing with stress appropriately.  Id.  Dr. Stramenga concluded that plaintiff's "difficulties appear to be caused by issues related to a mood disorder" and her results are "consistent with psychiatric problems" which "may significantly interfere with the claimant's ability to function on a daily basis."  Id.  Dr. Stramenga's prognosis was "guarded given the severity and chronicity of her symptoms."  Id.

The ALJ concluded that Dr. Stramenga's conclusion as to potentially marked difficulties in relating adequately with others and dealing with stress is "not consistent with the totality of the record and appears to be more restrictive than the claimant's already demonstrated adaptive functioning." T at 17. The ALJ pointed out that in contrast to her report to Dr. Stramenga that she could not shop, "she testified that her work as a companion required her to help others shop and run errands" and noted that at the time of her consultative examination, plaintiff was working as a companion performing these tasks. Id. Thus, he concluded that findings of marked levels of functioning in socialization was inconsistent with her actual functioning. Id. Similarly, the ALJ found that plaintiff's ability to relate adequately to others was not consistent with Dr. Stramenga's report that plaintiff was "cooperative and adequately related in the examination setting." Id.

Finally, the ALJ concluded that non-examining consultant Dr. Ferrin's assessment was "more consistent with the overall totality of the record" than Dr. Stramenga's. T at 17. Dr. Ferrin noted that plaintiff could understand and remember simple and detailed instructions, but "would have problems with high degree of complexity and carrying out highly complex or technical tasks[.]" Id. The ALJ pointed out Dr. Ferrin's conclusion that plaintiff could not work in crowded or noisy environments, and has "some difficulty with adaptation, but is able to cope with routine work demands and engage in interactions to meet basic work needs." Id.

First, plaintiff challenges the ALJ's assessment of Dr. Plotkin's treatment notes, specifically his statements that (1) Dr. Plotkin documented an improvement in plaintiff's

15

depression in June 2016, and (2) her mental status examinations that are mostly within normal limits. Dkt. No. 13 at 3, 5. However, full review of Dr. Plotkin's treatment notes demonstrate that the ALJ set forth an accurate overall assessment. Id. at 4. Plaintiff points to Dr. Plotkin's June 7, 2016 treatment note wherein plaintiff was reported as tearful and worried, dysphoric, anxious, sad mood and affect, self-deprecating, fair insight toward illness, more depressed than usual, increased anxiety, intermittent suicidal ideation without plan/intent, and that she received an "invitation to spend time on the psychiatric unit" which she "declined due to too many responsibilities." Id. She further notes that Dr. Plotkin observed that plaintiff's functioning had declined at this time. Id. Similarly, she points to Dr. Plotkin's June 28, 2016, treatment note wherein plaintiff was reported to be worried, dysphoric, anxious, and sad mood and affect, "but less so"; self-deprecating; depression "does look somewhat improved" but that she was experiencing "intolerable" side effects from her medication. Id. However, plaintiff glosses over the fact that within those very treatment notes themselves, as the ALJ observed, Dr. Plotkin noted improvement. T at 16.

Indeed, although there are treatment notes where plaintiff was reported as bring dysphoric, anxious, and sad, tearful, with intermittent suicidal ideation without plan/intent (T at 310, 312-13, 537-55, 558, 561, 564-67, 569-70, 585) – specifically, Dr. Plotkin's June 6, 2016, treatment note plaintiff points out – by the end of the same month, her depression was "somewhat improved" and she no longer had suicidal ideations. Id. at 313. At nearly all her appointments with Dr. Plotkin and with her

16

therapists[5]– including those where plaintiff presented with the above-reported symptoms – plaintiff was documented as having good relationships, cooperative, helpful, responsible, reality-based thought content, organized thought process, good judgment and good decision making, normal insight into her condition, oriented x3, normal memory, alert, organized thought processes, able to concentrate, normal speech, appropriate eye contact, normal motor behavior, and often without suicidal ideation.  Id. at 310, 311, 534-88.  She was further reported to be coping "relatively well" with stressors.  Id. at 311.  At other visits, she sometimes reported having suicidal ideation, but without an intent or plan. Id. at 559-61.

Similarly, at some visits with Dr. Plotkin and her therapists, plaintiff reported having difficulty leaving the house beyond food shopping or appointments or that she was isolating herself from friends and family, yet at later appointments, she indicated that she regularly attended work, where she reported that she was doing well, having positive engagement with clients and supervisors, and seeking additional clients. Compare id. at 537-40 with id. at 551, 573, 575-76, 578, 582-84, 588.  She also reported positive communications with her daughter and friends.  Id. at 537, 543, 548, 582.  She reported psychotherapy to be very helpful, and often that medication had been helpful with managing her depression and with her sleep and energy levels.  Id. at 537, 547, 564, 569, 585, 587-88. Viewing the medical record as a whole makes clear that the ALJ's detailed review of Dr. Plotkin's records and plaintiff's therapy treatment

---

[5]  It appears plaintiff saw two therapists from Columbia Memorial Psyhciatric & Psychologic Therapy Center.  Their names are largely illegible in the administrative transcript, but one therapist's name appears to be "A. Rian" and the other "Cheri Sciacca." See, e.g., T at 543, 548.

records and his conclusion that plaintiff had mostly normal mental status examinations (despite her symptoms) and reported a general improvement in her depression, is supported by substantial evidence.

This is also the case with the ALJ's conclusion that plaintiff did not experience disabling mental health symptoms expected to last at least twelve months. Dkt. No. 13 at 5. Plaintiff asserts that her medical records from Dr. Plotkin and her therapists demonstrate that her "mental health impairments caused her marked limitations in functioning (relating adequately to others and appropriately dealing with stress) from the alleged onset date . . . through the date of the decision." Id. However, the record does not support plaintiff's conclusory assertion. The ALJ acknowledged that plaintiff's psychiatric condition was noted to have worsened since late February 2017, but concluded that there was no indication that such worsening would last at least twelve months, noting that "[t]reatment records document that she is less depressed, but seldom leaves the house other than to go to work, food shopping, and appointments." T at 17. Although the ALJ observed that until March 2017, plaintiff worked as a companion therapist, which indicated that she had "only mild social and concentration restrictions as the duties including bringing her client to the library and shopping and accompanying the client with other errands was outlined as a semi-skilled occupation," the ALJ accommodated "the recent worsening in psychiatric symptoms." Id. Indeed, as it relates to her mental health impairments, the RFC takes any mental health limitations into account by limiting plaintiff to unskilled tasks requiring little to no judgment, simple duties learned in a short amount of time, minimal interaction with the general public,

and occasional interaction with co-workers and supervisors.  Id.

Second, plaintiff argues that the ALJ's conclusion that Dr. Stramenga's opinion was not consistent with the totality of the record is not supported by substantial evidence and points to certain of Dr. Plotkin's treatment records showing that plaintiff was tearful, depressed, sad, and was self isolating.  Dkt. No. 13 at 8.  The ALJ reasonably concluded that the areas in which he found potentially marked limitations – ability to maintain a regular schedule, relate adequately with others, and appropriately handle stress (T at 316) – is contradicted by record evidence.  The ALJ noted that at the time of her consultative examination, plaintiff was, albeit part time, working as a companion, which required her to relate to others, maintain a schedule, and handle stress.  T at 17.  The ALJ acknowledged that plaintiff had some limitations in functioning relating to her mental condition, but determined that they simply did not preclude plaintiff's ability to engage in full-time work.  Id. at 15.  In so determining, the ALJ pointed to the fact that plaintiff's part-time work as a companion supports a finding that plaintiff's socialization and skill levels are at a much higher level than plaintiff reported or as reflected in Dr. Stramenga's opinion and that plaintiff had marked limitations in this area.  Similarly, whereas Dr. Stramenga concluded that plaintiff had marked limitations in relating adequately with others, the ALJ points out that Dr. Plotkin repeatedly reports plaintiff as being cooperative and having the ability to concentrate, which is reflected in each of Dr. Plotkin's treatment notes.  Id. at 16.  As the ALJ's determination to assign little weight to Dr. Stramenga's conclusions as to marked limitations is supported by Dr. Plotkin's treatment records showing overall normal

mental status examinations and an ability to engage in socialization as well as Dr. Stramenga's own observation that plaintiff was "cooperative and related in an adequate manner," T at 315, the ALJ's opinion is supported by substantial evidence. The evidence as a whole does not support the extensive limitations Dr. Stramenga opined regarding plaintiff's relating adequately to others, maintaining a regular schedule, or dealing with stress; thus, the ALJ's decision to reject these findings is not reversible error.

Finally, the ALJ's rejection of the marked limitations opined by Dr. Stramenga is further supported by the opinion of state agency consultant Dr. Ferrin who concluded that plaintiff could understand and remember simple and detailed instructions, but "would have problems with high degree of complexity and carrying out highly complex or technical tasks[.]" T at 17. The ALJ's reliance on this opinion from a qualified expert in the field of social security disability is supported by substantial evidence. See Frey ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); Delgrosso v. Colvin, 3:13-CV-1470 (GTS/ESH), 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015) (Suddaby, J.) (adopting Report & Recommendation) (rejecting "global objection to reliance on non-examining medical advisers' opinions" by same plaintiffs' counsel). As the ALJ observed, and this Court has noted, plaintiff was repeatedly reported as being cooperative and helpful, she indicated getting along with her clients and supervisors, and communicating with friends and her daughter. She was also repeatedly described

as having the ability to concentrate.  T at 310-13, 534-588.

The RFC determination that plaintiff could perform unskilled tasks involving little or no judgment and simple duties, could interact minimally with the public and occasionally with coworkers is supported by the evidence as outlined herein.  T at 14-15.  Basic mental work activities include the ability to: understand, carry out, and remember simple instructions; use judgment; respond appropriately to supervision, co-workers and usual work situations; and deal with changes in a routine work setting.  20 C.F.R. §§ 404.1521(b)(3)-(6), 416.921(b)(3)-(6).  In the case at hand, the mental health treatment notations did not support limitations greater than those found by the ALJ.  The ALJ's RFC assessment takes into consideration the work-related activities envisioned by the regulations, including assessing plaintiff's ability to understand, remember, and carry out instructions, and plaintiff's ability to interact with others.  See, e.g., 20 C.F.R. § 416.945(c) (instructing that the Commissioner will take into consideration certain "mental activities" in assessing a claimant's RFC, "including limitations in understanding, remembering, and carrying out instructions, and responding appropriately to supervision, coworkers, and work pressures in a work setting").  By limiting plaintiff to simple tasks requiring little or no judgment, minimal interaction with the public, and occasional interaction with coworkers and supervisors, the ALJ adequately incorporated any potential limitation in these areas.  T at 14-15.

Having carefully reviewed the treatment notes specifically singled out by plaintiff and the totality of plaintiff's medical records, the Court finds that the ALJ's conclusion regarding plaintiff's mental health RFC is supported by substantial evidence, bearing in

21

mind that "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson</u>, 402 U.S. at 401. Even assuming, <u>arguendo</u>, that record evidence could provide substantial evidence that plaintiff is disabled by her mental health conditions, that is not the standard the Court is required to apply. If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." <u>Rosado</u>, 805 F. Supp. at 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." <u>Valente v. Sec'y of Health & Human Servs.</u>, 733 F.2d 1037, 1041 (2d Cir. 1984). As the ALJ's mental RFC determination is supported by the totality of the record before him and by plaintiff's activities, the ALJ's determination must be affirmed.

### III. Conclusion

Having carefully reviewed the record in light of plaintiff's arguments, the undersigned concludes that the Commissioner's determination resulted from the application of proper legal principles supported by substantial evidence. Wherefore, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's Motion for Judgment on the Pleadings (dkt. no. 13) is **DENIED**; and it is further

**ORDERED**, that defendant's Motion for Judgment on the Pleadings (dkt. no. 15) is **GRANTED**; and it is further

**ORDERED**, that defendant's decision is **AFFIRMED** and plaintiff's complaint is **DISMISSED**.

**IT IS SO ORDERED**.

Dated: February 25, 2020
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge